IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTIAN CARTER ADDISON, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. PX 17-0891 |
| MILTON V. PETERSON, D/B/A PETERSON COMPANIES, L.C., | * | |
| Defendant. | * | |

******

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Christian Carter Addison and Tanya Lyle bring suit against Defendant Milton V. Peterson seeking "reversal" of a 2001 deed conveying land to National Harbor Beltway, L.C. along with other related relief. ECF No. 2 ¶ 11. The Plaintiffs initially filed their suit in Prince George's County Circuit Court, and the Defendant subsequently removed the action to this Court. ECF No. 1. Peterson thereafter moved to dismiss the Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the Complaint, the materials attached thereto, and the parties' briefing on the issue, the Court GRANTS Peterson's motion.

**I. Background**

The Plaintiffs allege that they are descendants of John Addison, who, in 1698, was granted land in Oxon Hill by the government and received a patent to that land. ECF No. 2 ¶ 3. The land includes a burial ground for a number Addison family members (the "Cemetery"). *See* ECF No. 2 ¶ 6. From the Complaint and its attachments, it is apparent that the patented land was subdivided over time and subject to a number of conveyances, both through sale and otherwise. ECF No. 2 ¶ 5 (Walter Addison "received the Oxon Hill estate through a will"); ¶ 8(a) (Walter

1

Addison sold all of his land except the cemetery to a third party); ECF No. 2-1 ("The Addison family patents passed between a few different branches of the family. [Certain individuals] named their successors by virtue of will"; some Addison family members received title to different parts of the land from different inheritances.). According to the Complaint, the last member of the Addison family to live at Oxon Hill was Walter Addison, who sold all of his land except for the Cemetery to a Zachariah Berry in 1810. ECF No. 2 ¶ 8(a); ¶ 8(b). The Plaintiffs allege that Walter Addison desired to be, and was, buried in the Cemetery. ECF No. 2 ¶8, ¶¶8(a)–(d).

The Complaint puts forward no facts as to what happened to the title to the tract of land containing the Cemetery between 1810 and 1954. The Complaint does incorporate apparent land records noting that in 1954 Roberto and Dora Motta dedicated the Cemetery to a "reasonable organization" entrusted to care for the Cemetery. ECF No. 2-5 at 1, 4. The Plaintiffs allege that the Peterson Group, apparently the business run by Defendant Peterson, was contracted to "tend the cemetery," and at one time "owned" the Cemetary. ECF No. 2 ¶ 9(d). The Complaint is silent as to what relationship, if any exists, between the Addison family and the Mottas.

The Complaint is similarly silent as the legal status of the Cemetery between 1954 and 2001. In 2001, a confirmatory quit claim deed was executed by TRSTE, Inc., KMM, Inc., and National Harbor Beltway, L.C., establishing National Harbor Beltway's title to the Cemetery. ECF No. 2-3 at 2. No facts are alleged as to how the signatories to the confirmatory deed came to be in a position to "confirm" National Beltway Harbor as title-holder. Indeed, one of the exhibits on which the Plaintiffs rely for information regarding the ownership of the Cemetery explicitly states that it is not based on conducting a complete chain of title search. ECF No. 2-5

at 1. Plaintiffs plead no other facts to address the ownership or possession of the Cemetery during the decades prior to the 2001 issuance of the confirmatory quit claim deed.

Nonetheless, the Plaintiffs claim that they have ownership rights in the Cemetery as descendants of John Addison. Plaintiffs more particularly allege that John Addison's land patents grant them, as "heirs," "rights to the land" that are "held in perpetuity and take precedence over any subsequent legal strictures, including state laws and constitutional clauses," ECF No. 2 ¶10(b), that they have "certain privileges that aren't typically associated with land ownership in the United States," ECF No. 2 ¶ 10(c), that the "land patents are permanent," ECF No. 2 ¶ 10(d)(1), and that "rights inherent in patented land are carried from heir to heir and cannot be changed," ECF No. 2 ¶ 10(d)(2). On this basis, the Plaintiffs seek "reversal" of the 2001 deed. ECF No. 2 ¶¶ 2, 11(a). They further request an order that Peterson "case any and all actions . . . to inter, remove, and relocate" the bodies in the cemetery, ECF No. 2 ¶ 11(b) and damages in the amount of 20 million dollars, ECF No. 2 ¶ 11(c).

Peterson moves to dismiss the complaint because he is not the Cemetery's alleged title holder, and does not have a possessory interest in the Cemetery. Peterson additionally argues that the Complaint fails to state any legally cognizable claim for relief. *See* ECF No. 10 at 4–5.

## II. Standard of Review

Because the Plaintiffs are proceeding *pro se*, the Court must construe their complaint liberally to allow for the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Liberal construction requires that if the Court can reasonably read the Complaint to state a valid claim, it must do so; however, the court cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir.1990) ("The 'special judicial solicitude' with which a district court should view

such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed."). Further, "[a] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) properly is granted when a complaint does not contain sufficient factual allegations to render the plaintiff's claims facially plausible, or to permit reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678–79. In so assessing, a court takes as true all well-pleaded factual allegations and makes all reasonable inferences in the favor of the plaintiff. *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 1999). A court may consider materials attached to the Complaint when reviewing a Rule 12(b)(6) motion to dismiss. *Id.* However, when determining if a plaintiff has stated a valid claim, a court does not credit conclusory statements or a plaintiff's legal conclusions, even when the plaintiff purports them to be allegations of fact. *See Iqbal*, 556 U.S. 678–79; *Giarrantano v. Jonson*, 520 F.3d 298, 302 (4th Cir. 2008).

**III. Discussion**

A land patent is an initial conveyance of legal title for a defined tract of land from the government to a private individual. *See* 42 C.F.R. § 1865.0-5(c) ("Patents or other documents of conveyance means a land patent, a deed or some other similar instrument in the chain of title to realty that has been issued by the United States . . . pertaining to the disposal of public lands of the United States or of an interest therein."); *Bicknell v. Comstock*, 113 U.S. 149, 151 (1885) (patent was executed by the president conveying land to Bicknell; when patent has been executed

and recorded, title is conveyed and the power of the executive over it has ceased); *Irvine v. Marshall*, 61 U.S. 558, 561–62 (1857) ("[A]ll the lands in the Territories . . . are in the first instance the exclusive property of the United States, to be disposed of . . . as the Government may deem most advantageous.").

Once legal title to the land is conveyed by patent, the land may be disposed of in any manner deemed fit by the owner. *See Phillips v. Washington Legal Foundation*, 254 U.S. 156, 167 (1998) (it is a "fundamental maxim of property law that the owner of a property interest may dispose of all or part of that interest as he sees fit"); *First Charter Land Corp. v. Fitzgerald*, 643 F.2d 1011, 1014–15 (4th Cir. 1981) ("'property' refers to both the actual physical object and the various incorporeal ownership rights in the res, such as the right[ ] . . . to alienate"); *cf. Barney v. Dolph*, 97 U.S. 652, 653, 656, 659 (1878) (right equivalent to right of patentee includes power to sell; individuals with right to patent could sell property such that the rights of their children to inherit were cut off); *United States v. Oregon Lumber Co.*, 260 U.S. 290, 293 (1922) (pantentee subsequently conveyed land to another individual); *Moffat v. United States*, 112 U.S. 24, 31 (1884) (a fictitious patentee cannot convey title; a bona fide purchaser of patented land should know whether there is a legitimate patentee).[1]

Plaintiffs here seek "reversal" of the 2001 confirmatory quit claim deed. But as Peterson points out, no action specifically lies for "reversal" of a deed. Instead, to assert a right to the Cemetery, the Plaintiffs must bring an action to quiet title or for ejectment. Peterson argues, and the Court agrees, that the Plaintiffs have failed to state a claim on either theory.

First, an action to quiet title would require the Plaintiffs to allege plausibly that they hold legal title to the Cemetery *and* that they are in possession of it. *See Polk v. Pendleton*, 31 Md.

---

[1] The Plaintiffs seem to recognize as much in their Complaint. *See* ECF No. 2 ¶ 5 ("Walter [Addison] . . . received the Oxon Hill estate through a will and he acted within his rights to distribute the property as he saw fit.").

118, 124 (Md. Ct. App. 1869) (to bring claim to quiet title the plaintiff had to show "clear legal and equitable title to land connected with possession") (cited in *Porter v. Schaffer*, 126 Md. App. 237, 260–61 (Md. Ct. Spec. App. 1999). The Complaint, by contrast, makes clear that the Plaintiffs do not possess the Cemetery. (Furthermore, as discussed below, the Plaintiffs also fail to allege plausibly that they hold legal title to the Cemetery.) As such, the Plaintiffs cannot state a claim under this legal theory.

Second, to maintain an ejectment action, the Plaintiffs must allege plausibly that they have valid legal title to and a right to possess the Cemetery. *See Fenn v. Holme*, 62 U.S. 481, 483 (1858) ("That the plaintiff in ejectment must in all cases prove a *legal* title to the premises in himself, at the time of the demise laid in the declaration, and that evidence of an *equitable* estate will not be sufficient for a recovery, are principles so elementary and so familiar to the profession as to render unnecessary the citation of authority in support of them." (emphasis in original)); *Joseph v. Bonaparte*, 118 Md. 591, 593–94 (Md. Ct. App. 1912) ("Unless the plaintiff in ejectment shows a legal title and a right to possession . . . he cannot recover in ejectment under the settled law of this state.") (quoted in *Porter*, 126 Md. App. at 271). The Plaintiffs have failed to do so here.

The Plaintiffs baldly assert that they have unspecified rights to the Cemetery as "heirs" of Addison, with no facts to support this allegation. Merely averring a familial connection to Addison as the original owner does not itself vest Plaintiffs with legal entitlement to the property. This is especially so when considering that the Plaintiffs have pleaded conveyance and entrustment of the Cemetery in 1954. ECF No. 2-5 at 1, 4. That fact, in combination with the myriad conveyances and transfers of the larger tract, and at least one alleged prior "ownership" by the Peterson Group, makes it impossible for the Court to infer plausibly that the Plaintiffs

6

held legal title to the Cemetery in 2001 when the confirmatory quit claim deed issued.[2] To find otherwise would turn the law of property on its head. Although it is admirable that Plaintiffs seek to preserve and honor the dying wishes of their ancestor to be buried at Oxon Hill, they have not stated a plausible claim that permits this Court to provide them the relief they request.

## IV. Amendment of the Complaint

The Plaintiffs in their reply seek leave to amend their Complaint to cure any deficiencies regarding Peterson as defendant and as titleholder. ECF No. 14 at 2. The requested amendment, however, does not cure the failures to state a proper claim for "reversal" of the 2001 deed, or the Plaintiffs' other requested relief, whether the action is brought against Peterson, the Peterson Companies, or any other entity. *Cf. Porter*, 126 Md. App. at 274 (in an ejectment action, a plaintiff recovers based on the strength of the plaintiff's own title). The proposed amendment is thus futile, and is denied. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

## V. Conclusion and Order

Any claim the Plaintiffs could make that would entitle them to the relief they request would require them to have legal title to the property. However, the Plaintiffs have not alleged facts to make plausible that they hold or ever held legal title to the Cemetery over which they seek to assert rights. Accordingly, it is the 15th day of December, 2017, ORDERED:

1. That the Motion to Dismiss filed by Defendant MILTON V. PETERSON (ECF No. 10) BE, and the same hereby IS, GRANTED;
2. The Complaint filed by Plaintiffs CHRISTIAN CARTER ADDISON and TANYA LYLE (ECF No. 2) BE, and the same hereby IS, DISMISSED;
3. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to the Plaintiffs and counsel for the Defendant;
4. The Clerk is directed to CLOSE this case.

---

[2] It is not the Defendant's duty to "disprove" the Plaintiffs' claim at this juncture. ECF No. 14 at 4. Rather, it is the Plaintiffs' burden to render their claims plausible, which they have failed to do.

12/15/2017                                              /S/
Date                                             Paula Xinis
                                                 United States DistrictDistrict Judge